## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JANADA  GARNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-02043-TWP-DKL |
| | ) | |
| EXECUTIVE MANAGEMENT SERVICES, INC. | ) | |
| and STANLEY MILLS, | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY ON PENDING MOTIONS

This matter is before the Court on several pending motions filed by the parties.  The dispute in this matter surrounds Plaintiff, Janada Garner's ("Ms. Garner") claims of discrimination and retaliation by her employer.  On July 10, 2015, Ms. Garner filed an Amended Complaint alleging four counts:   (1) defamation *per se* against Defendant Stanley Mills ("Mr. Mills"); (2) sexual harassment (Title VII); (3) retaliatory discipline (Title VII); and (4) retaliatory termination (Title VII) against Defendant Executive Management Services, Inc. ("EMS").   On January 15, 2016, EMS and Mr. Mills (collectively, "the Defendants"), filed a Motion for Summary Judgment (Filing No. 96). Because Ms. Garner was proceeding *pro se*, Defendants also filed a Notice Regarding Right to Respond to and Submit Evidence in Opposition to Motion for Summary Judgment. (Filing No. 99.)  Thereafter, Ms. Garner filed her response.

Also pending before the Court is Ms. Garner's timely Objection to the Magistrate Judge's Report and Recommendation (Filing No. 144) concerning the parties' cross motions for sanctions (Filing No. 100, Filing No. 107.)  Ms. Garner also filed two additional motions, one related to

discovery and the other tiled "Motion for Judicial Review of the Defendants Evidence in Support of Motion Summary Judgment" [sic].  (Filing No. 139; Filing No. 140.)

For the following reasons, the Court grants the Defendants' Motion for Summary Judgment.  In addition, the Court adopts the Magistrate Judge's Report and Recommendations, thereby granting the Defendants' Motion for Sanctions and denying Ms. Garner's Motion for Sanctions.  Further, the Court denies as moot the remaining motions filed by Ms. Garner.

## I.  <u>BACKGROUND</u>

EMS is a commercial cleaning, facility maintenance, and management company based in Indianapolis, Indiana which provides commercial cleaning services in over thirty states.  EMS's two largest customer accounts in Indianapolis are Dow AgroSciences and Pike Township Schools.

On December 6, 2010, Ms. Garner began working for EMS as a commercial cleaner at the Dow AgroSciences facility.  (Filing No. 98-1 at 2.)  Ms. Garner was hired as a supervisor but stepped down to a custodian position due to lack of training.  (Filing No. 117 at 5.)  In early January 2011, she requested a transfer to another building because of an interpersonal conflict with her supervisor about her job duties.  (Filing No. 98-1 at 2, 4.)  Pursuant to Ms. Garner's request, EMS reassigned her to Pike Township Schools, where she worked at College Park Elementary School.

In July 2011, Ms. Garner was leaving the building when Mr. Mills, approached and asked her for a hug.  Mr. Mills proceeded to hug Ms. Garner and with both his hands reached down and grabbed Ms. Garner's buttocks.[1]  (Filing No. 56 at 3.)  Ms. Garner told him his conduct was unwelcomed and she admonished him.  (*Id.*)  Thereafter, Mr. Mills apologized for his actions.  (*Id.*

---

[1] Mr. Mills denies any inappropriate touching or making any sexual or romantic overtures to Ms. Garner, and further denies any interaction with her beyond ordinary social interaction among co-workers. However, as the summary judgment standard requires, the material facts are not necessarily objectively true; but, as required by Federal Rule of Civil Procedure 56, all inferences and all admissible evidence is presented in the light most favorable to Ms. Garner as the non-moving party.  *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

at 4.)  At that time, Mr. Mills was not employed by EMS; instead, he was a supervisor for a third party customer.

Ms. Garner remained at the elementary school until January 2012, when she complained that a woman named Betty, an employee of another vendor, Chartwell Food Services, was not respecting her personal boundaries by touching her on the shoulder and asking her for hugs.  (Filing No. 98-1 at 5.)  Betty did not work for EMS.  Ms. Garner requested a transfer because she felt uncomfortable and she did not have proper training.  EMS offered to transfer Ms. Garner to another work site within Pike Township Schools, which she accepted.  (Filing No. 98-1 at 5-6.)

In January 2012, Ms. Garner was reassigned to Pike High School.  (Filing No. 98-1 at 6.) Mr. Mills was the night shift supervisor at Pike High School and was now an employee of EMS. (Filing No. 98-3 at 2; Filing No. 98-4 at 2.)  Project Manager, Willie Goldsmith ("Mr. Goldsmith") was Ms. Garner's direct supervisor and oversaw the custodial operations of the Pike Township Schools. (Filing No. 98-3 at 2.)  Mr. Goldsmith reported to Regional Manager, Brian Wyatt ("Mr. Wyatt").  (Filing No. 98-1 at 7.)

On July 6, 2012, Ms. Garner suffered a minor on-the-job injury to her back.  She continued to work, however, until July 17, 2012, when she was assigned to some heavy lifting and moving of freight, which aggravated the injury.  (Filing No. 98-1 at 10-11.)  Ms. Garner was prescribed medication and physical therapy for her injuries and was placed on light duty with restrictions during her recovery.

On August 29, 2012 and September 4, 2012, Ms. Garner submitted written complaints about Mr. Goldsmith and Mr. Mills to Human Resources Manager Chris Stolte ("Mr. Stolte"), in an attempt to stop what she felt was harassment and retaliation.  (Filing No. 98-1 at 19-22, 110-122.)  Ms. Garner complained that Mr. Goldsmith was not respecting her work restrictions and

believed that she was "faking" her injuries.  *Id*.  In addition, Ms. Garner accused Mr. Mills of spreading a rumor that she had contracted the AIDS virus.  *Id*.  However, Ms. Garner did not raise any complaints of sexual harassment, discrimination, or defamation in her written statements.  *Id*. On September 6, 2012, after investigating the complaints, Mr. Stolte concluded that Ms. Garner had not been subjected to unfair treatment or a violation of company policy.  (Filing No. 98-1 at 123.)  Further, in her deposition, Ms. Garner admitted that she had never heard Mr. Mills say that she had AIDS.  (Filing No. 98-1 at 22.)

In December 2012, Mr. Mills explained to Ms. Garner that it was Christmas time, and he again asked Ms. Garner for hugs.  Ms. Garner refused and told Mr. Mills that she was not interested in any hugs.  (Filing No. 56 at 5.)

On March 4, 2013, Ms. Garner was approached by another EMS employee, LaMargo Coates ("Ms. Coates"), who said she had been receiving obscene telephone calls and text messages from someone whom she believed to be Ms. Garner's son.  (Filing No. 98-1 at 28-30, 131; Filing No. 98-4 at 7-8, 19-20.)  Ms. Garner denied the claim, reported the situation to Mr. Mills, and gave Mr. Mills a police telephone number to pass along to Ms. Coates for help in investigating harassing telephone calls.  *Id*.  On March 8, 2013, Ms. Coates approached Ms. Garner again with the same allegations, but this time the situation escalated into a physical argument and Ms. Coates threatened to "beat" Ms. Garner's "ass."  *Id*.  After intervening and asking both women to complete written statements regarding the incident, Mr. Goldsmith sent both Ms. Coates and Ms. Garner home.  *Id*.  That evening, Ms. Garner filed a police report against Ms. Coates.  *Id*.

Mr. Stolte conducted a formal investigation into the situation, which included obtaining written statements from six different witnesses.  (Filing No. 98-7 at 2.)  Based on his investigation, Mr. Stolte determined that both women had engaged in unprofessional and disruptive conduct on

customer property, and he issued a formal investigative report to that effect.  *Id*.  Mr. Stolte made

the decision to separate Ms. Garner and Ms. Coates, and both were given written warnings in

relation to this incident.  *Id*.  Ms. Coates was then transferred to another work location.  (Filing

No. 98-7 at 39.)

In the course of the investigation, Mr. Stolte learned that Ms. Garner had contacted the

Superintendent of Pike Township Schools, without permission from EMS, to request a meeting

with him in relation to this incident, which was a violation of EMS policy.  (Filing No. 98-7 at 2.)

Mr. Stolte and Mr. Goldsmith met with Ms. Garner to discuss the investigative findings.  *Id*.

During that meeting, they also confronted Ms. Garner about her request to meet with an EMS

customer.  *Id*.  Although she initially denied making the request, Ms. Garner later admitted having

done so and said that she was trying to obtain a copy of the surveillance video of the incidents with

Ms. Coates.  *Id*.

Mr. Wyatt and Mr. Stolte discussed the situation, including that Ms. Garner had an

extensive history of workplace conflicts and lack of respect for EMS management at Dow

AgroSciences and Pike Township Schools.  *Id*. at 2-3.  Mr. Wyatt was concerned about Ms.

Garner's contact with the Superintendent of Pike Township Schools because Pike is a major

account for EMS.  *Id*.  In light of these considerations, Mr. Wyatt decided not to return Ms. Garner

to work at either of those major accounts.  (Filing No. 98-8 at 3.)  There were no full-time openings

in any of Mr. Wyatt's other accounts at the time, and in light of these issues Ms. Garner was not

considered for any further placements. *Id*.  As a result, Ms. Garner remained employed by EMS

and continued to receive health care benefits, but she was not given a new work assignment and

did not work again for EMS after that.  (Filing No. 98-7 at 3.)

On April 3, 2013, Ms. Garner completed an intake questionnaire with the Equal Employment Opportunity Commission ("EEOC").  In her completed EEOC questionnaire, Ms. Garner alleged that male employees had not been sent home for similar escalated arguments on the job.  (Filing No. 98-9 at 10.)  On April 9, 2013, Ms. Garner filed her first charge of discrimination with the EEOC, claiming discrimination based on sex, disability, and retaliation. (Filing No. 98-1 at 33, 133.)  She alleged that Mr. Mills "gave [her] a hug and touched [her] butt" in 2011; that Mr. Mills spread rumors about her having AIDS in 2012;  that Mr. Mills "refused to honor [her] work related medical restrictions in late 2012"; that Mr. Goldsmith was also "harassing [her] about [her] work" when restricted medically; that she complained to Mr. Wyatt about the above problems in 2012 but received no relief; and that other employees were treated better "with respect to attendance issues and vacation requests."  *Id*.  Further, Ms. Garner repeated her claim that men were not punished for workplace disputes.  *Id*.

On September 27, 2013, following an investigation, the EEOC determined "it is unlikely that further investigation will result in a finding of a violation of the laws that the Commission is charged to enforce."  (Filing No. 98-1 at 134.)  As a result, the EEOC issued a "no cause" determination and a notice of right to sue.  *Id*.

Three days later, Ms. Garner visited the EEOC to seek reinstatement and re-opening of her charges.  (Filing No. 98-1 at 40, 137.)  On October 4, 2013, Ms. Garner sent a letter to the EEOC's Indianapolis District Office Director complaining about her experience with the EEOC intake investigators.  (Filing No. 98-1 at 40, 136.)  In particular, Ms. Garner claimed that she did not receive a "neutral" investigation and was not allowed to "participate in the process."  *Id*.  On October 7, 2013, Ms. Garner sent an additional written request to reinstate her charges.  (Filing No. 98-1 at 40, 137-139.)  Finally, on October 21, 2013, Ms. Garner again wrote to the EEOC and

alleged that the EEOC investigator who processed her charges "violate[d] the ethics of his job and the federal standards of investigative protocols" as well as Ms. Garner's rights.  (Filing No. 98-1 at 40, 138.)

On November 13, 2013, Ms. Garner emailed Mr. Stolte to request that EMS pay her remaining vacation time, which EMS did.  (Filing No. 98-7 at 3.)  Realizing that Ms. Garner had not worked for EMS since March 8, 2013, eight months before, Mr. Stolte made the administrative decision to terminate her employment in the EMS payroll system, effective November 22, 2013. *Id*.  On December 26, 2013, Ms. Garner filed this lawsuit.

Thereafter, on September 2, 2014, Ms. Garner filed a second charge of discrimination with the EEOC, alleging she was discharged in retaliation for making internal complaints about sexual harassment and for filing her initial EEOC charge.  (Filing No. 29-1.)  The EEOC investigated this new charge and, on January 21, 2015, issued a similar "no cause" determination and notice of right to sue.  (Filing No. 56-1.)  Ms. Garner filed a separate lawsuit regarding that retaliation claim. However, this Court consolidated that lawsuit with Ms. Garner's original lawsuit and ordered Ms. Garner to file a single amended complaint.  (Filing No. 55.)  On July 10, 2015, Ms. Garner filed her Amended Complaint. (Filing No. 56.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).   In ruling on a motion for summary judgment, the court reviews the record in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor.  *Zerante*, 555 F.3d at 584; *Anderson*, 477 U.S. at 255.

The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323 (noting that, when the non-movant has the burden of proof on a substantive issue, specific forms of evidence are not required to negate a non-movant's claims in the movant's summary judgment motion, and that a court may, instead, grant such a motion, "so long as whatever is before the district court demonstrates that the standard . . . is satisfied."). *See also* Fed. R. Civ. P. 56(c)(1)(A) (noting additional forms of evidence used in support or defense of a summary judgment motion, including: "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials").

Thereafter, a non-moving party, who bears the burden of proof on a substantive issue, may not rest on its pleadings but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. *Hemsworth*, 476 F.3d at 490; *Celotex Corp.*, 477 U.S. at 323-24; Fed. R. Civ. P. 56(c)(1). Neither the mere existence of some alleged factual dispute between the parties nor the existence of some "metaphysical doubt" as to the material facts is sufficient to defeat a motion for summary judgment. *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997); *Anderson*, 477 U.S. at 247-48; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which [it] relies." *Harney*, 526 F.3d at 1104.

Similarly, a court is not permitted to conduct a paper trial on the merits of a claim and may not use summary judgment as a vehicle for resolving factual disputes. *Ritchie v. Glidden Co., ICI Paints World-Grp.*, 242 F.3d 713, 723 (7th Cir. 2001); *Waldridge*, 24 F.3d at 920. A court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("these are jobs for a factfinder"); *Hemsworth*, 476 F.3d at 490. Instead, when ruling on a summary judgment motion, a court's responsibility is to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. *Id.*

### III. <u>DISCUSSION</u>

Ms. Garner alleges three claims against the Defendants: defamation, hostile work environment, and retaliation. No claims survive the Defendants' Motion for Summary Judgment.

### A. <u>Defamation</u>

To maintain an action for defamation a plaintiff "must demonstrate (1) a communication with a defamatory imputation; (2) malice; (3) publication; and (4) damages." *Kelly v. Tanoos*, 865 N.E.2d 593, 596-97 (Ind. 2007). However, a communication is defamatory *per se* if it imputes: "(1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct." *Id.* at 596.

Ms. Garner contends that Mr. Mills was "spreading the rumor that she had the loathsome disease AIDS in retaliation for complaining about discrimination." (Filing No. 56 at 5). However, Ms. Garner submits no evidence other than her own belief to support this contention. In her deposition, Ms. Garner admits that she never actually heard Mr. Mills spreading the alleged rumor. (Filing No. 98-1 at 22.) Instead, Ms. Garner relies solely on her subjective beliefs regarding the intentions behind her coworkers' actions and the hearsay reports of a coworker named Melissa, whom Ms. Garner has not identified as a witness. *Id.*

As presented, Ms. Garner relies entirely on subjective assumptions, which are insufficient to create a genuine issue of material fact. *See Mills v. First Fed. Sav. & Loan Assoc. of Belvidere*, 83 F.3d 833, 841-42 (7th Cir. 1996) ("subjective beliefs of the plaintiff are insufficient to create a genuine issue of material fact") (internal punctuation omitted). Without more, no reasonable jury can conclude that Mr. Mills actually spread the alleged rumor. Accordingly, the Defendants are entitled to summary judgment on this claim.

**B.**     **Hostile Work Environment**

Ms. Garner argues that she was subjected to a hostile work environment because of her gender, in violation of Title VII of the Civil Rights Act of 1964. However, Ms. Garner's claim is not viable as she cannot establish that she was subjected to severe or pervasive harassment or provide a basis for employer liability.

Title VII is violated when "the workplace is permeated with discriminatory intimidation ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment". *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and punctuation omitted); *Velez v. City of Chi.*, 442 F.3d 1043, 1047 (7th Cir. 2006) ("[a]n employer is prohibited from requiring employees to work in a discriminatory hostile or abusive environment"). At the same time, not all workplace unpleasantries give rise to liability under federal civil rights laws, which do not guarantee a perfect work environment. *Vore v. Ind. Bell Tel. Co.*, 32 F.3d 1161, 1162 (7th Cir. 1994). Instead, to create a hostile work environment, the conduct at issue must "have the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986).

To survive summary judgment on a hostile work environment claim, the plaintiff must put forth sufficient evidence to show that: (1) the work environment was both objectively and subjectively offensive; (2) the harassment complained of was based on a protected characteristic; (3) the conduct was either severe or pervasive; and (4) there is a basis for holding the employer liable for the harassment. *Dear v. Shinseki*, 578 F.3d 605, 611 (7th Cir. 2009); *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004).

### 1.   Severe or Pervasive

In determining whether harassing conduct was severe or pervasive, "[t]he key inquiry is whether the conduct was so severe or pervasive that it altered the conditions of the employment relationship." *Nichols*, 755 F.3d at 601.   In this regard, courts look to the "totality of the circumstances", including:  (1) the frequency of the discriminatory conduct; (2) how offensive a reasonable person would deem it to be; (3) whether it was physically threatening or humiliating conduct as opposed to mere verbal abuse; (4) whether it unreasonably interfered with the employee's work performance; and (5) whether it was directed at the employee. *Id. See also Yancick*, 653 F.3d at 544 ("[w]e will not find a hostile work environment for mere offensive conduct that is isolated, does not interfere with the plaintiff's work performance, and is not physically threatening or humiliating.").

The harassing incidents alleged by Ms. Garner did not occur frequently enough for a reasonable juror to consider the conduct to be pervasive.  "Relatively isolated" instances of non-severe misconduct will not support a hostile work environment claim. *See, e.g.*, *Weiss v. Coca–Cola Bottling Co. of Chi.*, 990 F.2d 333, 337 (7th Cir. 1993).  Ms. Garner complains of just a few relatively ambiguous incidents, occurring across fourteen months.  These incidents include that Mr. Mills would "follow her at times", stand too close while smiling, ask if she needed help with

her work, compliment her appearance, ask for hugs, and share information that he was single. ([Filing No. 56 at 4-5](#).)   In addition, Mr. Mills once positioned himself so that he was able to look down her shirt, and once followed her into a restroom stall where she was cleaning.  *Id*.  These incidents are not objectively frequent.

Although the incidents were clearly unprofessional, none were particularly severe. Notably, Ms. Garner has neither alleged nor submitted any evidence to suggest that any of the incidents were physically threatening.  *See Scruggs v. Garst Seed Co.*, 587 F.3d 832, 841-42 (7th Cir. 2009) ("[o]ffhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment"); *McKenzie v. Milwaukee Cnty.*, 381 F.3d 619, 625-26 (7th Cir. 2004) (holding that the "unfriendly", non-threatening, behavior of a coworker was insufficient to establish a hostile work environment).  Because the conduct alleged was neither severe nor pervasive, Ms. Garner cannot establish a hostile work environment claim.

### 2.   Employer Liability

Even if the Court were to find that the complained of conduct was objectively severe and pervasive, Ms. Garner cannot establish a basis for employer liability.  The standard of liability hinges on whether the harasser was the plaintiff's supervisor.  *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 477 (7th Cir. 2004).  Ms. Garner has not presented any evidence that a supervisor was involved in any of the five incidents of alleged harassment.  *See Vance v. Ball State Univ.*, 133 S. Ct. 1434, 2454 (2013) ("[w]e hold that an employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim"); *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1034 (7th Cir. 1998) (stating that the authority of a supervisor primarily consists of the power "to hire, fire, demote, promote, transfer, or discipline an employee").

Because the alleged harassment was perpetrated by a coworker, rather than a supervisor, Ms. Garner must proceed under a negligence theory and present "competent evidence that her employer was negligent either in discovering or remedying the harassment directed at her." *Phelan v. Cook Cnty.*, 463 F.3d 773, 784 (7th Cir. 2006) (internal citations omitted); *Vance v. Ball State Univ.*, 646 F.3d 461, 471 (7th Cir. 2011). In this regard, once the employer is made aware of the harassing conduct, "the employer can avoid liability for its employees' harassment if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring." *Vance*, 646 F.3d at 471; *see also Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 636 (7th Cir. 2009) ("[o]ur focus, therefore, is on whether [the employer] responded promptly and effectively to the incident").

In her deposition, Ms. Garner admits that none of the incidents concerning Mr. Mills were reported to Mr. Stolte or Mr. Goldsmith in Human Resources. (Filing No. 98-1 at 34.) This is notable given the fact that Ms. Garner had, on multiple other occasions, been very vocal about her negative interactions with coworkers, supervisors, and even EEOC staff. (*See* Filing No. 98-1 at 2, 4-6, 19-22, 40, 110-122, 137-39.)

Although Ms. Garner additionally alleges that on one occasion, Mr. Mills hugged her and grabbed her buttocks, this incident took place when Mr. Mills was not an employee of Defendants. (Filing No. 56 at 3-4; Filing No. 98-2 at 3.) Moreover, Ms. Garner has not submitted any evidence that Defendants were timely made aware of this incident or that they failed to take prompt action to correct it. *Id.* As such, Defendants cannot be held liable for these actions. *See Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 811-12 (7th Cir. 2001) (holding that employers can only be held liable for actions of non-employees when the employer knew of the conduct and failed to take corrective action).

13

In sum, because Ms. Garner cannot establish that the alleged conduct was sufficiently severe or pervasive and because she cannot establish a basis for employer liability, Defendants are entitled to summary judgment on her hostile work environment claim.

**C.    Retaliation**

Finally, Ms. Garner asserts claims of retaliation. She argues that her termination was in retaliation for complaining that Mr. Mills and Mr. Goldsmith were not following her work restrictions during her temporary injury, and for filing her initial EEOC discrimination complaint. Title VII prohibits an employer from acting in retaliation against employees who oppose any practice made unlawful under Title VII.  42 U.S.C. § 2000e-3(a) (2012).  Stated differently, "[a]n employer may not retaliate against an employee who has complained about discrimination or other employment practices that violate Title VII."  *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005).  As with a plaintiff's discrimination claims, a plaintiff may proceed under either a direct or indirect method of proof to establish his retaliation claim.  *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002); *Miller v. Ind. Univ. Health, Inc.*, No. 1:12-CV-1667-TWP, 2014 WL 4259628, at *6 (S.D. Ind. Aug. 29, 2014) (J. Pratt).

**1.    Direct Method**

Ms. Garner cannot establish a claim of retaliation under the direct method of proof.  Under the direct method of proof, a plaintiff must establish: (1) a statutorily protected activity; (2) an adverse employment action taken by the employer; and (3) a causal connection between the protected activity and the adverse action.  *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008); *Miller*, 2014 WL 4259628, at *6.  The type of circumstantial evidence that a plaintiff may produce to survive summary judgment under the direct method includes: (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected

14

group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically received better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action. *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011); *Martinez v. Ind. Univ. Health, Inc.*, No. 1:12-CV-567-TWP, 2013 WL 5775082, at *6 (S.D. Ind. Oct. 25, 2013) (J. Pratt).

To begin, Ms. Garner's complaints regarding the management style of Mr. Mills and Mr. Goldsmith, particularly regarding her work restrictions is not protected activity. *See, e.g.*, *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1146-47 (7th Cir. 1997) ("[i]n order to demonstrate a case of retaliatory discharge, a plaintiff must show that she opposed conduct prohibited by Title VII"); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663-64 (7th Cir. 2006) (noting that a complaint must indicate that discrimination occurred because of sex, race, national origin, or some other protected class to constitute a protected activity); *Miller v. Am. Fam. Mut. Ins., Co.*, 203 F.3d 997, 1008 (7th Cir. 2000) (holding that the plaintiff did not engage in a protected activity where her complaints concerned a general displeasure with being paid less than her coworkers rather than discrimination related to a protected class).

Defendants do not dispute that Ms. Garner engaged in protected activity by filing her discrimination complaint with the EEOC, nor do the Defendants dispute that Ms. Garner's termination constituted an adverse employment action. Accordingly, the first two prongs under the direct method are satisfied. However, Defendants argue that Ms. Garner cannot establish a causal connection between her discrimination complaint and her termination seven months later.

"Mere temporal proximity" is insufficient to raise a question of material fact regarding causation. *Tomanovich*, 457 F.3d at 665; *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002); *Miller*, 2014 WL 4259628, at *7. Nevertheless, while suspicious timing

alone is insufficient to establish a genuine issue of material fact, suspicious timing may permit a plaintiff to survive summary judgment if there is other evidence that supports the inference of a causal link. *Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005) ("[w]hen an adverse employment action follows on the close heels of protected expression and the plaintiff can show the person who decided to impose the adverse action knew of the protected conduct, the causation element . . . is typically satisfied"); *Martinez*, 2013 WL 5775082, at *7.

On March 8, 2013, Ms. Garner and Ms. Coates engaged in a significant argument, which resulted in both women being given written warnings, being sent home from work, and being permanently separated on the job. (Filing No. 98-1 at 28-30, 131; Filing No. 98-4 at 7-8, 19-20.) During his investigation of the incident, Mr. Stolte learned that Ms. Garner had also contacted the Superintendent of Pike Township Schools, a prominent customer of the Defendants, to request a meeting in relation to the incident. (Filing No. 98-7 at 2.) This direct contact with a customer was against EMS policy. Because Ms. Garner had an extensive history of workplace conflicts and had previously been transferred from the Defendants' other prominent customer, Mr. Wyatt decided not to return Ms. Garner to work at either location. (Filing No. 98-8 at 3.) As a result, Ms. Garner remained employed by EMS but was not given a new work assignment. (Filing No. 98-7 at 3.) Shortly thereafter, on April 9, 2013, Ms. Garner filed her first charge of discrimination with the EEOC, claiming discrimination based on sex, disability, and retaliation. (Filing No. 98-1 at 33, 133.)

On November 13, 2013, seven months after her EEOC filing and eight months after the incident with Ms. Coates, Ms. Garner emailed Mr. Stolte to request that EMS pay her remaining vacation time. (Filing No. 98-7 at 3.) Realizing that Ms. Garner had not worked for EMS for eight months, Mr. Stolte made the administrative decision to terminate her employment. (Filing No. 98-

7 at 3.)  Under these facts, a reasonable jury could not determine that a sufficient causal connection exists between Ms. Garner's discrimination complaint, a protected activity, and EMS's decision to terminate her employment.  Accordingly, Ms. Garner cannot establish her retaliation claim under the direct method.

### 2.   Indirect Method

In addition, Ms. Garner cannot establish her retaliation claim under the indirect method of proof.  Under the indirect method of proof, a plaintiff must first demonstrate that (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action by his employer; (3) she was performing her job satisfactorily; and (4) she was treated less favorably than a similarly situated employee who did not complain of discrimination.  *Argyropoulos*, 539 F.3d at 733; *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).  Under the indirect method, therefore, the first two elements are the same as the direct method of proof.  *Stephens*, 569 F.3d at 786.  However, instead of proving a direct causal link, a plaintiff must show that she was performing her job satisfactorily and that she was treated less favorably than a similarly situated employee who did not complain of discrimination.  *Id*. at 786-87.  Once a plaintiff establishes the *prima facie* case under the indirect method, the defendant must articulate a non-discriminatory explanation for its action.  *Id*. at 787.  Thereafter, the burden shifts back to the plaintiff to demonstrate that the defendant's explanation is pretextual.  *Id*.

### a.   Satisfactory Job Performance

The Defendants argue that Ms. Garner was not performing her job satisfactorily at the time EMS decided to terminate her employment.  In particular, EMS argues that Ms. Garner had a history of workplace disputes with her coworkers; that she was involved in a significant altercation with Ms. Coates; and that, given her previous disputes and transfers, there was nowhere else she

17

could work.  Ms. Garner presents no evidence to dispute these facts and, therefore, cannot establish that she was meeting the legitimate job expectations of her employer at the time she was terminated.

### b.   Pretext

Finally, Ms. Garner cannot demonstrate that the stated reasons for Defendants' termination decision were pretextual.  Once the defendant employer asserts a non-invidious explanation for its employment decisions, the plaintiff must then present sufficient evidence to show that the employer's explanation is merely pretextual.  *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012); *Grady v. Affiliated Comput. Servs. ACS*, No. 1:13-CV-342-TWP, 2015 WL 1011355, at *4 (S.D. Ind. Mar. 4, 2015) (J. Pratt).  Pretext means "a dishonest explanation, a lie rather than an oddity or an error."  *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000); *Miller*, 2014 WL 4259628, at *5.  Accordingly, the question is not whether the employer's explanation for its employment decision was "accurate, wise, or well-considered", but whether the employer's explanation was "honest".  *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006).  While the court is not in the position to "sit as a superpersonnel department that will second guess an employer's business decision . . . [the Court] need not abandon good reason and common sense in assessing an employer's actions."  *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001); *Miller*, 2014 WL 4259628, at *6.

A plaintiff can demonstrate that the employer's explanations are pretextual either directly, by showing that "a discriminatory reason more likely motivated" the employer's actions, or indirectly, by showing that the employer's explanations are "unworthy of credence."  *Senske v. Sybase, Inc.*, 588 F.3d 501, 507 (7th Cir. 2009).  To show that the employer's non-discriminatory explanations are not credible, the plaintiff must point to evidence that the employer's stated reasons

18

are not the real reasons for the employer's action, have no grounding in fact, or are insufficient to warrant the employer's decision. *Id.*; *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007) (noting that a plaintiff must identify such "weaknesses, implausibilities, inconsistencies, or contradictions" in the employer's asserted reasons that a reasonable person could find them not credible).

Ms. Garner contends that the reason for her termination was pretextual but she presents no evidence to support her argument. Instead, she asserts, without support, that the Defendants and their attorneys have "hidden or destroyed evidence" that would otherwise reveal a discriminatory animus as to the true motivation for her termination. Ms. Garner's relentless allegations of discovery malfeasance have been the subject of numerous discovery disputes and, ultimately, the parties' competing motions for sanctions. (*See* Filing No. 142 at 2-7, 10-11) (noting Ms. Garner's eight motions for sanctions and eight motions to reopen discovery). In this regard, the Magistrate Judge made the following observations in her recommendation that the Court grant the Defendants' motion for sanctions:

> The undersigned does not take the request for monetary, or any, sanctions lightly. But given the record of Plaintiff's repetitive and unreasonable filings seeking sanctions and re-opening of discovery, and her failure to heed the Court's warning to be careful in making accusations challenging counsel's integrity, the undersigned concludes that sanctions should be imposed against Plaintiff.

*Id.* at 11. The record of these proceedings indicate that no "smoking gun" evidence of a cover up exists. Ms. Garner has presented no evidence to support her allegations that Defendants' stated reasons for her termination are pretextual. Having failed to produce such evidence, Ms. Garner cannot establish that her termination was retaliatory under the indirect method of proof.

Consequently, because Ms. Garner has not presented sufficient facts, under either methods of proof, for a reasonable jury to conclude that her termination was in retaliation for complaining

about her supervisor and coworkers or for filing a discrimination complaint, the Defendants are also entitled to summary judgment with regard to Ms. Garner's retaliation claim.

**D.**   **Objection to the Magistrate Judge's Report and Recommendation**

As a final matter, the Court addresses Ms. Garner's objection to the Magistrate Judge's Report and Recommendation**.**   On January 14, 2016, Ms. Garner filed a Motion for Sanctions alleging discovery abuse and spoliation of evidence by the Defendants and their counsel, Greg Guevara. (Filing No. 100.)   Thereafter, the Defendants filed a cross motion seeking sanctions against Ms. Garner under the Court's inherent authority for filing repetitive and vexatious filings, unsubstantiated motions for sanctions and/or motions accusing counsel and Defendants of unethical conduct and bad faith, and motions seeking unwarranted re-opening of discovery or leave to conduct discovery out of time.  (Filing No. 107; Filing No. 108.)  On February 16, 2016, the undersigned referred the cross motions for sanctions to Magistrate Judge Denise K. LaRue.  The Magistrate Judge issued her Report and Recommendation, denying Ms. Garner's motion and recommending the following sanction against Ms. Garner:

> [t]hat Plaintiff be admonished that any further motion or request for sanctions, any further motion or request to re-open discovery or conduct discovery, and any further baseless accusation of unprofessional conduct or bad faith directed at Defendant(s) and/or defense counsel, specifically including Attorney Guevara, will be subject to further sanctions, including payment of the Defendants' attorney fees and costs incurred in responding to such a motion, request, or accusation, and up to and including dismissal of this action with prejudice.

(Filing No. 142 at 11).  Ms. Garner filed a timely Objection to the Report and Recommendation. (Filing No. 144.)

A district court may assign dispositive matters to a magistrate judge, in which case the magistrate judge may submit to the district judge only a report and recommended disposition, including any findings of fact.  28 U.S.C. § 636(b)(1)(B) (2012); Fed. R. Civ. P. 72(b)(1).  *See*

*also Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009).  The magistrate judge's recommendation on a dispositive matter is not a final order, and the district judge makes the ultimate decision to "accept, reject, or modify" the findings and recommendations, and the district court need not accept any portion as binding.  28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b)(3).  *See also Schur*, 577 F.3d at 760-61.

After a magistrate judge makes a report and recommendation, either party may object within fourteen days of being served with a copy of the same.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  When a party raises specific objections to findings and recommendations made within the magistrate judge's report, the district court is required to review those objections *de novo*, determining for itself whether the magistrate judge's decisions as to those issues are supported by substantial evidence or were the result of an error of law.  28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b)(3).  *See also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).  The court may, however, defer to those conclusions to which timely objections have not been raised by a party.  *Schur*, 577 F.3d at 760-61.  Further, if a party fails to object to a magistrate judge's report and recommendation, or objects on some issues and not others, the party waives appellate review of the issues to which the party has not objected.  *Johnson*, 170 F.3d at 739.

The Report and Recommendation chronicles the discovery disputes raised by Ms. Garner throughout this case, acknowledges and documents all of the relevant history and properly dismisses any notion that Defendants or defense counsel acted in bad faith in the production of documents.  The Report and Recommendation concludes that Defendants gained no advantage and that Ms. Garner suffered no prejudice.  The Court has reviewed Ms. Garner's objections *de novo* and finds that the Magistrate Judge's conclusions are supported by substantial evidence.  Ms. Garner fails to identify any error of law or fact in the Magistrate Judge's conclusions.  Accordingly,

Ms. Garner's Objection is **overruled** and the Court **adopts the Magistrate Judge's Report and Recommendation.**

## IV.  <u>CONCLUSION</u>

For the aforementioned reasons, the Court **GRANTS** the Defendants' Motion for Summary Judgment (Filing No. 96).  In addition, the Court adopts the Magistrate Judge's Report and Recommendations (Filing No. 142) and **GRANTS** the Defendants' Cross Motion for Sanctions consistent with the Magistrate Judge's Report and Recommendation (Filing No. 107), and **DENIES** Ms. Garner's Motion for Sanctions (Filing No. 100).  Further, the Court **DENIES as moot** the remaining motions filed by Ms. Garner (Filing No. 139; Filing No. 140).

**SO ORDERED.**

Date: 7/8/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Janada Garner
5810 Big Oak Drive, Apt. B
Indianapolis, Indiana  46254

Gregory W. Guevara
BOSE MCKINNEY & EVANS, LLP
gguevara@boselaw.com

Mark Wohlford
BOSE MCKINNEY & EVANS, LLP
mwohlford@boselaw.com

Philip R. Zimmerly
BOSE MCKINNEY & EVANS, LLP
pzimmerly@boselaw.com

Nelson A. Nettles
LEBLANC NETTLES DAVIS
nelson@indianalawgroup.com